UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

VICTOR MANUEL GARAY,

                Petitioner,

v.

DOUGLAS TASSON,

                Respondent.

_____/

Case No. 2:24-cv-202

Honorable Robert J. Jonker

## <u>OPINION</u>

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Victor Manuel Garay is incarcerated with the Michigan Department of Corrections at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Following a jury trial in the Kalamazoo County Circuit Court, Petitioner was convicted of first-degree murder, in violation of Mich. Comp. Laws § 750.316; conspiracy to commit murder, in violation of Mich. Comp. Laws §§ 750.157a and 750.316; and two counts of possession of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b. The trial court initially sentenced Petitioner to life without parole for the murder and conspiracy convictions and to 2 years, to be served consecutively, for the felony-firearm convictions. On November 10, 2022, the trial court resentenced Petitioner to 40 to 60 years' incarceration for the first-degree murder and conspiracy convictions and to 2 years, to be served consecutively, for the felony-firearm convictions.

On November 25, 2024, Petitioner filed his habeas corpus petition, raising the following two grounds for relief:

     I.      Admission of preliminary examination testimony of two witnesses was an abuse of discretion and a violation of Petitioner's right to confrontation.

     II.     Petitioner's convictions should be vacated as juror misconduct denied Petitioner [] a fair trial.

(§ 2254 Pet., ECF No. 1, PageID.14, 20.) Respondent contends that Petitioner's grounds for relief are meritless. (ECF No. 4.) For the following reasons, the Court concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

## Discussion

## I.    Factual Allegations

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> This case involves the shooting death of 13-year-old Michael Day on May 26, 2014, on Race Street in the Edison neighborhood of Kalamazoo, Michigan. The Edison neighborhood was home to two gangs: Trapp Money and the Washington Street Boys. Day was a member of the Washington Street Boys, and [Petitioner] admitted a relationship with Trapp Money.
>
> [Petitioner], who was 16 years old at the time of trial, was tried with his two adult male codefendants before separate juries. Testimony was received from many live witnesses. However, two juvenile sisters, N and T, whose preliminary-examination testimony placed [Petitioner] in the proximity of the shooting, were declared unavailable for trial over the defense's objection. The parties made a record of the objection, but neither the sisters nor their father were examined regarding their unavailability in open court. Instead, the court received information regarding threats made to the witnesses on Facebook, and the prosecution provided information that the father of the two girls communicated that he would not allow them to testify when he brought them to court under subpoena. The court admitted their preliminary-examination testimony, finding that their refusal to testify because of intimidation made them unavailable. Numerous other fact witnesses testified. Several police officers also testified, including Officer Gary Latham from the crime laboratory, who provided testimony regarding the weapon used to shoot the victim, the direction of weapon fire, and other related issues.
>
> After the jury trial, the court was apprised of potential juror misconduct. Specifically, a juror reported that another juror was acquainted with Officer Latham and vouched for his expertise in weapons matters to the jury. Additionally, the juror

reported that members of the jury used cell phones during the trial proceedings. The court held a hearing on this issue and placed the reporting juror under oath. At the conclusion of that hearing, the court declined to order a new trial.

*People v. Garay*, 903 N.W.2d 883, 886–87 (Mich. Ct. App. 2017).

Jury selection for Petitioner's trial occurred on October 2, 2014. (Trial Tr. I, ECF No. 5-5.) Over the course of six days, the jury heard testimony from numerous witnesses. (Trial Tr. II, III, IV, V, VI, VII, and VIII, ECF Nos. 5-6, 5-7, 5-8, 5-9, 5-10, 5-11.) On October 17, 2014, the jury returned a guilty verdict. (Trial Tr. IX, ECF No. 5-13, PageID.1350–1351.)

On October 29, 2014, Petitioner, through counsel, filed a motion for a new trial based upon juror misconduct. (ECF No. 5-14.) Specifically, Petitioner's counsel averred that he had spoken to Juror 12 by phone shortly after October 17, 2014, and that Juror 12 had told counsel that "many jurors were using their cellular phones throughout the deliberation process." (*Id.*, PageID.1359.) Juror 12 also told counsel that another juror, believed to be Juror 8, represented that he knew Officer Latham well, knew that Latham was an expert, and that if Latham "stated the weapon could be fired accurately, that the other jurors could be 'extremely confident' in this testimony." (*Id.*) Ultimately, on March 19, 2015, the trial court entered an order denying Petitioner's motion for a new trial. (ECF No. 5-17.) Petitioner appeared before the trial court for sentencing on July 30, 2015. (ECF No. 5-18.)

Petitioner appealed his convictions and sentences, raising the following claims for relief: (1) the trial court erred by declaring the two juvenile witnesses unavailable and allowing for admission of the preliminary examination testimony; (2) the trial court abused its discretion in not ordering a new trial on the basis of juror misconduct; and (3) Petitioner's life without parole sentences were unconstitutional because he was a juvenile at the time of the offense. *See generally Garay*, 903 N.W.2d 883. On April 11, 2017, the Michigan Court of Appeals affirmed Petitioner's

3

convictions but reversed his life without parole sentences and remanded the matter to the trial court for resentencing. *Id.* at 886.

Petitioner and the State subsequently filed applications for leave to appeal to the Michigan Supreme Court. In an order entered on April 5, 2019, the supreme court held the applications in abeyance pending its decision in *People v. Masalmani. See People v. Garay*, 924 N.W.2d 590 (Mich. 2019). On October 20, 2020, the supreme court entered an order that, in lieu of granting leave to appeal, reversed the court of appeals' judgment to "the extent that it would broadly preclude sentencing courts from considering, at all, the traditional objectives of sentencing – punishment, deterrence, protection, retribution, and rehabilitation – when considering whether to sentence persons who were under the age of 18 when they committed their offenses to a term of life without parole." *People v. Garay*, 949 N.W.2d 673, 674 (Mich. 2020). The supreme court noted further:

> In addition, in light of *People v. Skinner*, 502 Mich. 89, 917 N.W.2d 292 (2018), we VACATE the remainder of part IV of the Court of Appeals judgment and we REMAND this case to that court to determine whether the trial court properly considered the "factors listed in *Miller v. Alabama*, [567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407] (2012)," MCL 769.25(6), or otherwise abused its discretion. The application for leave to appeal as cross-appellant is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

*Id.*

On remand, the Michigan Court of Appeals again affirmed Petitioner's convictions, reversed his life without parole sentences, and remanded the matter to the trial court for resentencing. *See People v. Garay*, No. 329091, 2021 WL 5027974, at *1 (Mich. Ct. App. Oct. 28, 2021). The court of appeals noted that it was retaining jurisdiction. *Id.* at *5.

On November 22, 2022, the trial court resentenced Petitioner to 40 to 60 years' imprisonment on the murder and conspiracy convictions and to a consecutive two years for the felony-firearm convictions. *See People v. Garay*, No. 329091, 2023 WL 2334683, at *1 (Mich. Ct.

App. Mar. 2, 2023). On review after remand, the court of appeals affirmed those sentences. *Id.* at *2. The Michigan Supreme Court denied Petitioner's application for leave to appeal on January 12, 2024. *People v. Garay*, 998 N.W.2d 896 (Mich. 2024). This § 2254 petition followed.

## II.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to

an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate

courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.    Discussion

### A.    Ground I—Admission of Preliminary Examination Testimony

As his first ground for relief, Petitioner contends that the admission of two witnesses' preliminary examination testimony was an abuse of discretion and also violated his Sixth Amendment Confrontation Clause rights. (§ 2254 Pet., ECF No. 1, PageID.14.) As the Michigan Court of Appeals summarized:

> During trial, the prosecution asked the trial court to declare that N and T were unavailable as witnesses under MRE 804(a) and to admit their preliminary-examination testimony. According to the prosecution, N and T were subpoenaed and had been contacted a number of times. Their father informed the members of the Kalamazoo Department of Public Safety, who had made the contact, that N and

> T would not appear because they had been threatened. However, N and T were
> brought to court by their father on the day that they were to appear, but their father
> stated that their presence was "a courtesy." The sisters, who had been threatened,
> would not testify. Detective Corey Ghiringhelli checked the Facebook page of
> either N or T, and he saw a picture of the girl testifying at the preliminary
> examination with the comment "that bitch should die." The trial court declared the
> two sisters unavailable and allowed the jury to hear their preliminary-examination
> testimony. The trial court noted that telephone messages left by its staff with the
> father of N and T had not been returned.

*Garay*, 903 N.W.2d at 887.

The Confrontation Clause of the Sixth Amendment gives the accused the right "to be

confronted with the witnesses against him." U.S. Const. amend VI; *Pointer v. Texas*, 380 U.S. 400,

403–05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). "The

central concern of the Confrontation Clause is to ensure the reliability of the evidence against a

criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding

before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Confrontation Clause,

therefore, prohibits the admission of an out-of-court testimonial statement at a criminal trial unless

the witness is unavailable to testify and the defendant had a prior opportunity for cross-

examination. *See Crawford v. Washington*, 541 U.S. 36, 59 (2004). There are two requirements to

consider with respect to the unavailability requirement. First, a witness cannot be deemed

unavailable unless the government has made a good-faith effort to obtain his or her presence at

trial proceedings. *See Ohio v. Roberts*, 448 U.S. 56, 74 (1980). Second, the unavailable witness

must have given testimony at previous judicial proceedings against the same defendant, and that

testimony must have been subject to cross-examination by that defendant. *See Crawford*, 541 U.S.

at 54.

The Michigan Court of Appeals addressed Petitioner's claim under the following standard:

> A defendant shall enjoy the right to be confronted with the witnesses against him.
> U.S. Const., Am. VI. Under the Confrontation Clause, the testimonial statements
> of witnesses who are absent from trial are not admissible unless the witness was

> unavailable to testify and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 59, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Testimony given at a preliminary examination is a testimonial statement. *Id.* at 68, 124 S. Ct. 1354. "The Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *United States v. Owens*, 484 U.S. 554, 559, 108 S. Ct. 838, 98 L. Ed. 2d 951 (1988) (quotation marks, citation, and brackets omitted).

*Garay*, 903 N.W.2d at 889. There is no question that the court of appeals applied the correct standard. Petitioner, therefore, can only overcome the deference afforded state court decisions if the court of appeals' determination was based on an unreasonable application of *Crawford* or if the court of appeals' resolution was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).

### 1. Unavailability

The court of appeals first addressed the trial court's conclusion that N and T were unavailable as witnesses. The court of appeals set forth the definition of hearsay under the Michigan Rules of Evidence, as well as when testimony given by an unavailable declarant may be admitted under Michigan Rule of Evidence 804(b)(1). *See Garay*, 903 N.W.2d at 887–88.

The court of appeals then concluded that the trial court did not abuse its discretion by declaring N and T unavailable, writing:

> The trial court did not abuse its discretion by declaring N and T to be unavailable. The decision of N and T's father not to allow the two sisters to testify is not expressly addressed under MRE 804(a), but it is of the same character as other situations outlined in the rule. *See People v. Adams*, 233 Mich. App. 652, 658, 592 N.W.2d 794 (1999). Additionally, because N and T appeared on the fourth day of trial pursuant to a subpoena, their departure from the courthouse and their refusal to return to testify constituted a refusal to testify "despite an order of the court to do so." MRE 804(a)(2); *Adams*, 233 Mich. App. at 659 n.6, 592 N.W.2d 794.[1] Given their father's refusal to allow them to testify and his refusal to respond to the trial court's attempts for contact, N and T were certainly unavailable according to the ordinary meaning of the word. *Adams*, 233 Mich. App. at 657–659, 592 N.W.2d 794. Furthermore, testimony at trial regarding the dangerous character of the Edison neighborhood, the Facebook threat, and the father's refusal to allow N and T to testify out of fear for their safety shows that the reason for the refusal to testify was

self-preservation. *Id.* at 658, 592 N.W.2d 794. While the better practice would have been to make a record of their unavailability by examining each as to any threats received and the factors that influenced their refusal to testify, the trial court's decision to declare N and T unavailable was within the range of reasonable and principled outcomes. *Unger*, 278 Mich. App. at 217, 749 N.W.2d 272.

The trial court also did not abuse its discretion by admitting the preliminary examination testimony of N and T under MRE 804(b)(1). First, there is no dispute that the preliminary-examination testimony was given "at another hearing of the same or a different proceeding . . . ." MRE 804(b)(1). Second, [Petitioner] had "an opportunity and similar motive to develop the testimony" at the preliminary examination. *Id.* The purpose of a preliminary examination is "to determine if a crime has been committed and, if so, if there is probable cause to believe the defendant committed it." *People v. Johnson*, 427 Mich. 98, 104, 398 N.W.2d 219 (1986) (citation and quotation marks omitted). The prosecution's purpose in presenting the testimony of N and T at the preliminary examination, i.e., to show that [Petitioner] conspired with codefendant Rashad Perez to shoot at members of the Washington Street Boys and that [Petitioner] was the person who shot Day, was the same purpose that the prosecution had in presenting their testimony at trial. Therefore, [Petitioner] had an "interest of substantially similar intensity" in proving or disproving the testimony of N and T. *Farquharson*, 274 Mich. App. at 278, 731 N.W.2d 797 (citation and quotation marks omitted). Additionally, although the burden of proof was lower at the preliminary examination, *see People v. Yost*, 468 Mich. 122, 126, 659 N.W.2d 604 (2003), [Petitioner] had a similar motive to cross-examine N and T at both proceedings—[Petitioner] was motivated to show that their testimony regarding what they saw and heard from their porch lacked credibility or was not accurate, *Farquharson*, 274 Mich. App. at 278, 731 N.W.2d 797. And [Petitioner] did, in fact, cross-examine N and T with regard to their credibility. Under these circumstances, the trial court's decision to admit the preliminary-examination testimony of N and T fell within the range of reasonable and principled outcomes. *Unger*, 278 Mich. App. at 217, 749 N.W.2d 272.

––––––––––––––––––––

[1] We find no merit to [Petitioner's] argument that the trial court should have ordered N and T to testify. Because the prosecution had subpoenaed them, there was already an order for them to testify.

*Garay*, 903 N.W.2d at 888–89 & n.1.

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle*, an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine

state-court determinations on state-law questions." 502 U.S. at 67–68. The decision of the state

courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78,

84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a

state court's interpretation of state law, including one announced on direct appeal of the challenged

conviction, binds a federal court sitting in habeas corpus."). Thus, the court of appeals' conclusion

that the trial court properly deemed N and T unavailable and admitted their preliminary

examination testimony under the Michigan Rules of Evidence is axiomatically correct.

It is possible that an evidentiary ruling—even a ruling that is axiomatically correct under

state law—still violates due process. State-court evidentiary rulings can rise to the level of due

process violations if they offend some principle of justice so rooted in the traditions and conscience

of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir.

2000) (quotation marks omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001);

*Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide

latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, this Court may not grant relief if it would have decided the

evidentiary question differently. The Court may only grant relief if Petitioner is able to show that

the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court

on a question of law or if the state court decided the evidentiary issue differently than the Supreme

Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860

(6th Cir. 2000); *see also Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (stating that, to obtain

habeas relief based on an allegedly improper evidentiary ruling, a petitioner must identify "a

Supreme Court case establishing a due process right with regard to the specific kind of evidence

at issue").

Petitioner has not met this difficult standard with respect to the question concerning unavailability. Indeed, in the context of review under the AEDPA, the Supreme Court has explicitly cautioned against disturbing a state court's reasonable conclusion regarding unavailability:

> [W]hen a witness disappears before trial, it is always possible to think of additional steps that the prosecution might have taken to secure the witness' presence, *see* [*Ohio v. Roberts*, 448 U.S. 56, 75 (1980)], but the Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry, no matter how unpromising. And, more to the point, the deferential standard of review set out in 28 U.S.C. § 2254(d) does not permit a federal court to overturn a state court's decision on the question of unavailability merely because the federal court identifies additional steps that might have been taken. Under AEDPA, if the state-court decision was reasonable, it cannot be disturbed.

*Hardy v. Cross*, 565 U.S. 65, 71–72 (2011).

In his § 2254 petition, Petitioner argues that the trial court erred in declaring N and T unavailable to testify because "there was never anything shown to the court that there had been threats made toward these two witnesses." (§ 2254 Pet., ECF No. 1, PageID.17.) Petitioner suggests that N and T, as well as their father, should have been held in contempt, and that the trial court should have "determine[d] the truth of the statement that they had been threatened." (*Id.*) Essentially, Petitioner reiterates the arguments that he raised before—and that were rejected by— the court of appeals. Petitioner, therefore, fails to explain how the court of appeals' resolution of the issue is unreasonable under clearly established federal law. Given the explanation provided by the prosecutor as well as N and T's father, and given the fact that N and T's father refused to respond to the trial court's attempts to contact N and T through him, the court of appeals reasonably determined that the trial court had properly deemed N and T unavailable to testify. Thus, the court of appeals reasonably determined that both N and T were unavailable within the meaning of the Confrontation Clause.

## 2.    Prior Opportunity for Cross-Examination

The court of appeals then noted that Petitioner had been able to cross-examine N and T at his preliminary examination and, therefore, that admission of their preliminary examination testimony at Petitioner's trial did not violate his Confrontation Clause rights. *Garay*, 903 N.W.2d at 889.

The United States Court of Appeals for the Sixth Circuit has noted that there exists "some question whether a preliminary hearing necessarily offers an adequate prior opportunity for cross-examination for Confrontation Clause purposes." *Al-Timimi v. Jackson*, 379 F. App'x 435, 437–38 (6th Cir. 2010) (citing, *inter alia, Vasquez v. Jones*, 496 F.3d 564, 577 (6th Cir. 2007)) (doubting whether "the opportunity to question a witness at a preliminary examination hearing satisfies the pre-*Crawford* understanding of the Confrontation Clause's guarantee of an opportunity for effective cross-examination" (internal quotation marks omitted)). Thus, Petitioner's challenge is certainly colorable. However, the Supreme Court has never held that a defendant's Confrontation Clause rights are violated when a witness is unavailable for trial and the trial court admits that witness's preliminary examination testimony. *See id.* at 438. Thus, for purposes of federal habeas review, the Sixth Circuit has concluded that a state court's determination that preliminary examination testimony was properly admitted is not an unreasonable application of clearly established Supreme Court precedent. *Id.* at 438–40; *see also Williams v. Bauman*, 759 F.3d 630, 636 (6th Cir. 2014) (citing *Al-Timimi* with approval and upholding on habeas review the admission of testimony from the petitioner's own preliminary examination).

In his § 2254 petition, Petitioner vaguely asserts that he did not have an adequate opportunity to cross-examine N and T at the preliminary examination because "there was a limited amount of discovery and/or a limited amount of investigation and preparation for meaningful

confrontation." (§ 2254 Pet., ECF No. 1, PageID.19.) Petitioner, however, fails to explain how counsel's cross-examination of N and T would have been more complete had he received more discovery from the State or had more time to prepare.

In sum, Petitioner fails to demonstrate that the court of appeals' rejection of his argument concerning N and T's unavailability and the admission of their preliminary examination testimony at trial is contrary to, or an unreasonable application of, clearly established federal law, particularly *Crawford*. Petitioner, therefore, is not entitled to relief with respect to habeas ground I.

### B.    Ground II—Juror Misconduct

As his second and final ground for relief, Petitioner contends that his right to a fair trial was violated when jurors engaged in misconduct. (§ 2254 Pet., ECF No. 1, PageID.20.)

A criminal defendant is constitutionally entitled to a trial "by an impartial jury." *See* U.S. Const. amend. VI; *see also Irvin v. Dowd*, 366 U.S. 717, 722 (1961) (noting that the "right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors"). This guarantee reflects the requirement that a jury arrive at a verdict solely "based upon the evidence developed at the trial." *Turner v. Louisiana*, 379 U.S. 466, 472 (1965) (quoting *Irvin*, 366 U.S. at 722).

Due process, however, "does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips*, 455 U.S. 209, 2017 (1982). "When a trial court is presented with evidence that an extrinsic influence has reached the jury which has a reasonable potential for tainting that jury, due process requires that the trial court take steps to determine what the effect of such extraneous information actually was on that jury." *Ewing v. Horton*, 914 F.3d 1027, 1030 (6th Cir. 2019) (quoting *Nevers v. Killinger*, 169 F.3d 352, 373 (6th Cir. 1999), *abrogated on other grounds by Harris v. Stovall*, 212 F.3d 940 (6th Cir. 2000)).

The Supreme Court has "long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Smith*, 455 U.S. at 215. Such a hearing, referred to as a *Remmer*[1] hearing, must be held once a defendant raises a "colorable claim of extraneous influence." *See United States v. Owens*, 426 F.3d 800, 805 (6th Cir. 2005). To assert a colorable claim, a defendant "must do more than simply raise the possibility of bias." *Id.*

Petitioner raised his juror misconduct claim on direct appeal, and the Michigan Court of Appeals rejected it. The court of appeals first noted that a trial court's decision to grant or deny a motion for a new trial based upon allegations of juror misconduct is reviewed for abuse of discretion. *See Garay*, 903 N.W.2d at 889. The court of appeals then stated:

> [Petitioner] sought to show that the jury was subject to extraneous influences through the affidavit and testimony of Juror DG. Firmly established in the common law is a prohibition against the admission of juror testimony to impeach a jury verdict. *People v. Fletcher*, 260 Mich. App. 531, 539, 679 N.W.2d 127 (2004). The only recognized exception to this rule relates to situations in which the jury verdict was affected by an extraneous influence. *Id.* Thus, when there is evidence to suggest that the verdict was affected by an influence external to the trial proceedings, a court may consider juror testimony to impeach a verdict. *Id.* But when the alleged misconduct relates to influences internal to the trial proceedings, a court "may not invade the sanctity of the deliberative process." *Id.* The distinction between external and internal influences is not based on the location of the alleged misconduct. *Budzyn*, 456 Mich. at 91, 566 N.W.2d 229. "Rather, the nature of the allegation determines whether the allegation is intrinsic to the jury's deliberative process or whether it is an outside or extraneous influence." *Id.* "Generally speaking, information is deemed 'extraneous' if it derives from a source 'external' to the jury. 'External' matters include publicity and information related specifically to the case the jurors are meant to decide, while 'internal' matters include the general body of experiences that jurors are understood to bring with them to the jury room." *Warger v. Shauers*, 574 U.S. ——, 135 S. Ct. 521, 529, 190 L. Ed. 2d 422 (2014) (citation omitted).

*Garay*, 903 N.W.2d at 890.

Petitioner contends that the jury was subject to extraneous influences in two ways: (1) that the jurors used their cell phones throughout deliberations; and (2) that Juror 8 told the other jurors

---

[1] *Remmer v. United States*, 347 U.S. 227 (1954).

that he knew Officer Latham well, that Officer Latham was an expert in firearms, and that the jurors could confidently believe Officer Latham's testimony. The court of appeals first addressed Petitioner's argument regarding use of cell phones, stating:

> [Petitioner] claims that the jurors were subject to extraneous influences through their use of cell phones during deliberations. Juror DG testified that jurors, himself included, used their cell phones during breaks. Juror DG used his cell phone for text messaging, and he had no personal knowledge for what purposes the other jurors used their cell phones. Accordingly, [Petitioner] has not established that the jury was subject to any extraneous influence through the use of cell phones. *Budzyn*, 456 Mich. at 88–89, 566 N.W.2d 229.

*Garay*, 903 N.W.2d at 890.

A state court's findings regarding juror partiality are questions of fact that are presumptively correct under 28 U.S.C. § 2254(d). *See Smith*, 455 U.S. at 218 (citing *Sumner v. Mata*, 449 U.S. 539, 551 (1981)). Here, Petitioner offers no evidence, much less clear and convincing evidence, to overcome this presumption with respect to the court of appeals' conclusion that the jury was not subject to any extraneous influence when they used their cell phones during breaks. Petitioner does not even discuss the court of appeals' conclusion regarding the jurors' use of cell phones in his § 2254 petition. Instead, Petitioner addresses it in his reply. (ECF No. 6.) Petitioner asserts in a conclusory manner that "[t]he very fact of several juror[s] use of cell phones in contact with individuals 'outside of the deliberation process' . . . is indicative of a high probability . . . that unconstitutional acts, behavior, conversations, and decision making occurred." (*Id.*, PageID.2248.) Petitioner, however, provides no evidence, much less clear and convincing evidence, that any juror used his or her cell phone to discuss Petitioner's criminal proceedings with any outside individuals while the jury was deliberating. For these reasons, Petitioner has not demonstrated that the court of appeals' rejection of this argument is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to relief with respect to this aspect of habeas ground II.

16

Next, the court of appeals considered Petitioner's arguments regarding Juror 8 and his

opinions regarding Officer Latham, stating:

> [Petitioner] also claims that the jury was subject to extraneous influences through
> Juror 8. According to Juror DG, Juror 8 told the jurors that he knew Officer Gary
> Latham well, that Officer Latham was an expert in firearms, and that they could be
> extremely confident in Officer Latham's testimony. [Petitioner] has not established
> that the jury was subject to an extraneous influence through Juror 8. *Id.* Internal
> matters include the general body of experiences that jurors are understood to bring
> with them to the jury room. *Warger*, 574 U.S. at ——, 135 S.Ct. at 529. Juror 8's
> statements regarding Officer Latham were based on his own personal knowledge
> of and experience with the officer. The statements were not based on anything that
> Juror 8 had read or heard about the case. While Juror 8 should have disclosed his
> relationship with Officer Latham during voir dire, Juror 8's statements did not
> provide him or the other jurors with any knowledge regarding Day's murder. *Id.* at
> ——, 135 S. Ct. at 529.
>
> Even if Juror 8's statements were an extraneous influence, and assuming that there
> was a real and substantial possibility that the statement could have affected the
> jury's verdict, *Budzyn*, 456 Mich. at 89, 566 N.W.2d 229, the error was harmless.
> Although the testimony of the three witnesses who were with Day when he was
> shot indicated that the only person they saw with a gun was Perez, Joshua Parker,
> who lived in the area, testified that, based on the different "pops" he heard, there
> were at least two, if not three, guns fired. Specifically, regarding [Petitioner], Parker
> testified that he saw [Petitioner], holding a gun, come down the alley from Race
> Street to James Street. He identified the gun that [Petitioner] had as the .16–gauge
> shotgun that was later found by Detective Frederick Hug at the basement landing
> of an abandoned house on James Street. Parker saw [Petitioner] put the shotgun in
> the grass or thickets. About 15 to 20 minutes later, Parker saw [Petitioner] run down
> the alley toward Race Street with the shotgun "laterally" by his knees. Parker then
> heard multiple gunshots. Within 15 to 20 seconds, Parker saw [Petitioner] run down
> the alley toward James Street. [Petitioner], who was still holding the shotgun, was
> "visibly in a hurry." T, who lived at the corner of Hays Park Avenue and James
> Street, testified that she heard [Petitioner] and Perez talking about "airing out" any
> members of the Washington Street Boys that they saw. T, as well as N, saw Perez
> and [Petitioner] split up. Perez went down Hays Park Avenue, while [Petitioner]
> went down the alley. After N and T heard gunshots, [Petitioner] came to their house.
> According to them, as well as DeShawndra Spivey, who was visiting the two
> sisters, [Petitioner] was wearing gloves and had bullets with him. Spivey testified
> that [Petitioner] said, "[H]e shot." Lieutenant Jeffrey Crump, an expert in firearms
> identification, testified that the shotgun hull found in the alley by Officer Latham,
> which was a Hornady .20–gauge SST slug, was fired from the .16–gauge shotgun.
> Lieutenant Crump also testified that the bullet recovered from Day's chest and the
> sabot found by Officer Latham on the sidewalk south of the alley were consistent
> with the bullets and sabots in the Hornady .20–gauge SST slugs that Lieutenant
> Crump purchased. Additionally, Officer Latham testified that the bullet he

recovered from the tire of the Cadillac, which was parked on Race Street in front of the area where Day was shot, was consistent with a Hornady .20–gauge SST slug and that, because of the location of the hole in the tire, the bullet had to have come from "the north, northeast" of where it had entered the tire. In light of this testimony, the alleged error that exposed the jury to extraneous influence was harmless beyond a reasonable doubt. *Budzyn*, 456 Mich. at 89, 566 N.W.2d 229. The evidence of [Petitioner's] guilt was overwhelming.

*Garay*, 903 N.W.2d at 890–91.

In his § 2254 petition, Petitioner contends that the court of appeals erred in denying this portion of his juror misconduct claim because "Juror 8 knew Officer Latham and came into deliberations using his personal knowledge of Officer Latham as [a] significant factor in deliberations—this knowledge being an extraneous influence." (§ 2254 Pet., ECF No. 1, PageID.22.) Petitioner also notes that "[i]t appears Juror 8 used this personal knowledge to influence other jurors to reach the ultimate conclusion of a verdict of guilt." (*Id.*)

In his reply, Petitioner reiterates the arguments raised both on direct appeal and in his § 2254 petition. Petitioner contends that the trial court did not resolve the matter regarding Juror 8 "in an adequate or appropriate manner" because Juror 8 was not "compelled to attend and testify at [a post-trial] hearing." (ECF No. 6, PageID.2246.) Petitioner suggests that the court of appeals' conclusion that the jury was not subject to any extraneous influence from Juror 8 and that, even if the jury was, any such error was harmless, is "fatally flawed." (*Id.*, PageID.2247.)

As this Court has already noted, a state court's findings regarding juror partiality are questions of fact that are presumptively correct under 28 U.S.C. § 2254. *See Smith*, 455 U.S. at 218 (citing *Summer*, 449 U.S. at 551). The court of appeals concluded that "Juror 8's statements regarding Officer Latham were based on his own personal knowledge of and experience with the officer," and that the statements made by Juror 8 during deliberations "were not based on anything that Juror 8 had read or heard about the case." *Garay*, 903 N.W.2d at 890. The court of appeals concluded that such statements did not constitute an impermissible extraneous influence upon the

18

other jurors. *See id.* Petitioner offers no evidence, much less clear and convincing evidence, to overcome this presumption.

Although Petitioner contends that the trial court should have held a hearing and taken sworn testimony regarding the statements Juror 8 made concerning Officer Latham, as set forth above, a trial court is required to hold a *Remmer* hearing regarding juror partiality **only after** a defendant raises a "colorable claim of extraneous influence" that does more than "simply raise the possibility of bias." *See Owens*, 426 F.3d at 805. Here, Petitioner has not presented any evidence to overcome the state courts' conclusion that Petitioner had not raised a colorable claim of extraneous influence before the trial court—he did not present any evidence to suggest that Juror 8 had impermissibly influenced the other jurors with extraneous influences. Thus, any suggestion that the trial court erred by not conducting a *Remmer* hearing does not entitle Petitioner to federal habeas relief.

Moreover, as set forth above, the court of appeals concluded that even if Juror 8's statements regarding Officer Latham qualified as extraneous influences, any error that occurred was harmless given the overwhelming evidence against Petitioner. *See Garay*, 903 N.W.2d at 891. A claim of juror misconduct premised upon extraneous influences is subject to harmless error analysis. *See Doan v. Brigano*, 237 F.3d 722, 738 (6th Cir. 2001), *overruled on other grounds by Wiggins v. Smith*, 539 U.S. 510 (2003). The impact of an error on the outcome of the proceedings is also the focus of federal harmless error analysis. *See, e.g.*, *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (adopting as the standard for determining whether habeas relief if appropriate "whether the . . . error 'had substantial and injurious effect or influence in determining the jury's verdict.' "); *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (posing the question as "Do I, the judge, think that the error substantially influenced the jury's decision?"); *Brown v. Davenport*, 596 U.S. 118,

126 (2022) (stating that "a state prisoner . . . must show that the error had a 'substantial and injurious effect or influence' on the outcome of his trial" (quoting *Brecht*, 507 U.S. at 637)). A state appellate court's decision that the error was not outcome determinative is the equivalent of a determination that the error was harmless under *Brecht*. *Kyles v. Whitley*, 514 U.S. 419, 435–36 (1995).

*Brown* states that "a state court's harmless-error determination qualifies as an adjudication on the merits under AEDPA." 596 U.S. at 127. Accordingly, the Court must defer to that adjudication under § 2254(d)(1) unless the "petitioner persuades [the Court] that no 'fairminded juris[t]' could reach the state court's conclusion under [the Supreme] Court's precedents." *Id*. at 1525 (quoting *Davis v. Ayala*, 576 U.S. 257, 269 (2015)). This is a standard that is intentionally difficult to meet. *See Woods*, 575 U.S. at 316.

In his petition and reply, Petitioner reiterates the arguments that he raised in—and that were rejected by—the court of appeals. Although Petitioner suggests that the court of appeals erred in concluding that any alleged error regarding Juror 8 was harmless, Petitioner does not offer any argument or evidence suggesting that no fairminded jurist could come to the conclusion reached by the court of appeals under Supreme Court precedent. By failing to do so, Petitioner fails to demonstrate that any alleged misconduct had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. As noted by the court of appeals, Joshua Parker testified that he saw Petitioner holding a gun, heard numerous gunshots, and then saw Petitioner run down an alley while still holding the shotgun. *See Garay*, 903 N.W.2d at 891. Petitioner then went to N and T's house. *Id.* DeShawndra Spivey, who was visiting N and T at the time, saw that Petitioner was in possession of gloves and bullets, and that Petitioner said "he shot." (*Id.*) Moreover, the State provided testimony that the bullets recovered from both the alley and the

victim's chest were fired from a .16-gauge shotgun, and Parker identified the .16-gauge shotgun recovered by law enforcement as the shotgun that he had seen Petitioner with at the time of the shooting. *See id*.

Given Petitioner's failure to persuade the Court that no fairminded jurist could reach the conclusion arrived at by the court of appeals, the Court will defer to the court of appeals' determination. The Court's deference to the court of appeals' determination that any alleged misconduct by Juror 8 was harmless error necessarily leads to a conclusion that Petitioner has failed to demonstrate that the court of appeals' rejection of this claim of juror misconduct is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief with respect to this aspect of habeas ground II.

In sum, Petitioner has failed to demonstrate that the court of appeals' rejection of his juror misconduct claim is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to relief with respect to habeas ground II.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that

reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's denial of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment denying the petition, as well as an order denying a certificate of appealability.

Dated:    July 26, 2025                                    /s/ Robert J. Jonker
                                                          Robert J. Jonker
                                                          United States District Judge